UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL, | 4:20-CV-04044-RAL |
| Plaintiff, | |
| vs. | ORDER DENYING PLANTIFF'S MOTION FOR CHANGE OF VENUE AND 1915A SCREENING FOR SERVICE IN PART AND DISMISSAL IN PART |
| KRISTI NOEM, GOVERNOR FOR THE STATE OF SOUTH DAKOTA IN HER OFFICIAL AND UNOFFICIAL CAPACITY[1]; MIKE LEIDHOLT, SECRETARY OF CORRECTIONS IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; DARIN YOUNG, WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; TROY PONTO, ASSOC. WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; JOHN BENITON, ASSOC. WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CLIFF FANTROY, DIRECTOR OF SECURITY IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CHAD ROBERT, MAJOR IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; KEITH DITMANSON, SECTION MANAGER IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; C. WYNIA, LT. SPECIAL INVESTIGATION UNIT IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; WELDING, SSGT INDENTIFICATION OFFICE IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; AND MILLER, WEST HALL COORDINATOR IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; GLOBAL TEL LINK CORPORATION (GTL); JEFF HAIDINGER, EMPLOYEE OF GTL; STEVE MANTANORIS, EMPLOYEE OF GTL; M. KING, REGIONAL MANAGER OF GTL; L. OLSEN, GROUDN PERSONNEL FOR GTL; | |

---

[1] Rindahl's complaint lists this defendant as Kristen Noam, but the name has been changed in the caption to reflect the correct spelling.

|                  |   |
|------------------|---|
| Defendants.      |   |

Plaintiff Randy Lee Rindahl filed a pro se class action lawsuit under 42 U.S.C. § 1983. Doc. 1. Rindahl is a barred filer under the Prison Litigation Reform Act, but he paid the entire filing fee on March 18, 2020. *See* 4:17-CV-4104-RAL, Doc. 9. Rindahl moves to add defendants, Doc. 3, and moves for a change of venue, Doc. 4.

## I.      Motion to Add Defendants

Rindahl moves to add Global Tel Link Corporation (GTL), Jeff Haidinger, Steve Mantanoris, M. King, and L. Olsen as defendants. Doc. 3-1 at 1. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend his complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). At this time, Rindahl does not need the Court's leave to amend his complaint. Defendants GTL, Haidinger, Mantanoris, King, and Olsen are added as defendants and will be considered during this Court's screening under 28 U.S.C. § 1915A.[2] Rindahl's motion, Doc. 3, is denied as moot.

## II.     Motion to Change Venue

Rindahl asks that his case be moved to the District of Minnesota because he believes there is an "inability to obtain a bias free forum within the District of South Dakota- relevant to [the] political an[d] budget cross-over[.]" Doc. 4. Under 28 U.S.C. § 1404(a) and (b), this Court has the discretion to transfer a civil action when appropriate to do so. Section 1404(a) allows a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(b) allows the court to transfer a civil action from a division in which the case is pending to another division within the

---

[2] This Court does not comment on whether the newly added defendants are considered "state actors" under § 1983. Rindahl has also asserted federal question jurisdiction under 28 U.S.C. § 1331.

same district.  Neither § 1404(a) nor § 1404(b) supports granting Rindahl's motion for a change

of venue.  Rindahl's arguments about being unable to "obtain a bias free forum" because of

"political an[d] budget cross-over" are misguided.  The defendants Rindahl names are employed

by the state of South Dakota and a private corporation.  The District of South Dakota is a federal

court which operates completely independently from the South Dakota state courts, state agencies

and the state budget. The District of South Dakota federal court routinely presides over cases

involving state actors. Rindahl's motion for change of venue, Doc. 4, is denied.

## III.    Allegations of Rindahl's Complaint

Rindahl brings this lawsuit "on behalf of himself- and similar like persons" under Rule 23

of the Federal Rules of Civil Procedure.  Doc. 1 at 1.  His Complaint alleges violations that have

occurred from 2015 to 2019.  See id. He claims that the South Dakota Department of Corrections

(SDDOC) has entered into a contract with Global Tel Link Corporation (GTL) that provides email,

e-books, phone services, and streaming services.  Id. at 2.  Rindahl believes that this contract is

fraudulent and a misrepresentation because it allegedly violates federal regulations.  Id.  Rindahl

claims he is unlawfully billed, which he believes proves that there is an illegal and unconstitutional

partnership between defendants.  Id. at 2-3.

Rindahl has asked for defendants to examine the billing records and believes that SDDOC

and GTL have "failed to disclose" the billing rate and "contractual rate changes." Id. at 3.  He has

contacted GTL about the billing on some of his phone calls and they allegedly responded with a

"false statement [that] 'There was no charge[.]' " Id. at 4.  Rindahl claims SDDOC has not

responded to his questions about the billing rate or charges and that defendants have failed to

investigate his claims of fraud and misrepresentation. Id. at 4, 35.

3

Rindahl also believes that there has been "illegal altering of GTL Software through actions of 1 or more DOC [w]orkstations, creating obstruction- and illegal calling practices" and the SDDOC has failed to investigate. Id. at 6. Rindahl claims he has requested that the SDDOC investigate the alleged "fraudulent billing practices" and that he has uncovered a three-year period of illegal billing practices. Id. at 11. He believes that the SDDOC has refused to remedy the billing issue and claims that GTL and SDDOC are violating the Sherman Act through their "illegal partnership" and "billing fraud." Id. at 13.

Rindahl alleges that the contract between GTL and SDDOC has an intent to obstruct his access to legal advice. Id. at 7, 19. Rindahl claims that he has unsuccessfully tried to put federal and state courthouses phone numbers on his phone list. Id. at 14. Between 2017 until present, Rindahl has tried to contact: 1) Paul Ryan's Offices; 2) Wisconsin Department of Justice; 3) the Governor of Wisconsin; 4) "Wisconsin 1st District;" 5) D.C. Federal Courthouse; 6) Keith Loken (attorney); 7) Renee Christensen (attorney); 8) Eastern District of Virginia; 9) Chris McKinney (Wisconsin Office of Gov. Affairs); and 10) Angela Kennecke (Keloland News). Id. at 13-14. All of these requests to have the individuals, offices, and courts to be put on his calling list were either allegedly not responded to or blocked. Id. at 13-15. Rindahl believes that the defendants are obstructing him from contacting certain entities and people and that this "obstruction" has amounted to a violation of his right to access the courts. Id. at 15-23.

Rindahl has requested information about his account from GTL and claims that they responded that it was no longer available and on another occasion that " '[y]our attorney has to subpoena for them now I can't just print them.' " Id. at 24. Rindahl has requested his billing statement and a print-out of phone numbers multiple times and allegedly receives the same answer that the records can only be given by attorney subpoena. Id. at 24-26. Rindahl claims that GTL

does not disclose its service rates accurately to its consumers (inmates). Id. at 27. He believes there have been calling rate increases that have not been acknowledged by SDDOC and GTL and claims this is fraud. Id. at 28. Rindahl believes that SDDOC has had access to the GTL operating system and that it is causing "obstruction of phone lines." Id. at 31. Rindahl also challenges the fees attached to the email services and the defendants' limitation on the number of characters, and the "needless delays of 24 hrs to 48 hrs upon receipt of email[] transfer to [an] inmate['s] tablet[.]" Id. at 33. Rindahl identifies over 40 statutes/regulations he believes the defendants are violating. Id. at 1, 34. He seeks remedy through injunctive relief and monetary damages. See id. at 34-44.

## IV.   Discussion

### A.   Screening and Dismissal Standards

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); see Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (listing cases that stand for the proposition that such complaints must not be conclusory).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985).

<u>Twombly</u> requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted); <u>see also</u> <u>Abdullah v. Minnesota</u>, 261 F. App'x 926, 927 (8th Cir. 2008) (citing <u>Twombly</u> and noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### B.    Analysis

#### 1.    Class Action

Rindahl seeks to bring a class action lawsuit against the defendant. Doc. 1 at 1. "Pro se litigants may not represent the interests of other parties." <u>Litschewski v. Dooley</u>, No. CIV. 11-4105-RAL, 2012 WL 3023249 at *1 n.1 (D.S.D. July 24, 2012); <u>see e.g.</u>, <u>Fymbo v. State Farm Fire and Cas. Co.</u>, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Rindahl may not bring a class action suit as a pro se litigant, thus his request for appointment of counsel under Federal Rule of Civil Procedure 23(g) is denied. Fed. R. Civ. P. 23(g) (stating that if a court certifies a class the court must appoint counsel).

#### 2.    Official Capacity Claims

Rindahl sues defendants in their official and unofficial (individual) capacities. Doc. 1 at 1. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." <u>Will v. Mich. Dep't of</u>

State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  Thus, it is a suit against the state itself.  While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity.  Id.  But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply.  See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009).

Here, Rindahl seeks to recover money damages.  Doc. 1 at 35.  Consequently, because Rindahl has sued defendants who work for the state of South Dakota in some capacity, Kristi Noem, Mike Leidholt, Darin Young, Troy Ponto, John Beniton, Cliff Fantroy, Chad Robert, Keith Ditmanson, C. Wynia, Welding, and Miller, in their official capacities, Rindahl has asserted a claim for money damages against the state of South Dakota.  The state of South Dakota has not waived its sovereign immunity.  Thus, Rindahl's claims against Noem, Leidholt, Young, Ponto, Beniton, Fantroy, Robert, Ditmanson, Wynia, Welding, and Miller in their official capacities for money damages are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Individual Capacity Claims

#### a.    Federal Communications Act/ "Truth in Billing"

Rindahl asserts that defendants have violated federal regulations, more commonly known as the Truth-in-Billing Requirements because they are over-billing their consumers and have declined to provide him with his billing statement.  Doc. 1 at 4, 11.  He asserts that defendants are

not following 47 C.F.R. §§ 64.2401, 64.6110 and 64.6090. Id. at 22, 27, 34.[3] This Court has held that a "[f]ailure to comply with [47 C.F.R. § 64.2401(b)] constitutes an unjust and unreasonable practice in violation of § 201" of the Federal Communications Act (FCA), 47 U.S.C. § 201. All. Commc'ns Coop., Inc. v. Glob. Crossing Telecomms., Inc., 663 F. Supp. 2d 807, 835 (D.S.D. Sept. 29, 2009). " '[T]o violate a regulation that lawfully implements § 201(b)'s requirements is to violate the statute.' "    Id. (quoting Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 54 (2007)); see also Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 172 (E.D. Mich. 2006) (suggesting that the Truth-in-Billing Requirements implement § 201(b)'s requirements). At this time, this Court cannot say that Rindahl's claims under the FCA are wholly without merit so those claims survive 28 U.S.C. § 1915A screening.

### b.    First Amendment

Rindahl vaguely states that his First Amendment right of access to the courts is being violated.[4] Doc. 1 at 13, 34-35. He claims that the SDDOC and GTL have entered into their contract to obstruct his access to legal advice and have impeded his ability to add federal and state courthouses numbers to his phone list. Id. at 7, 9, 14. It is well established "that prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977) abrogated

---

[3] 47 C.F.R. § 64.2401 describes what information must be on telephone bills. 47 C.F.R. § 64.6110 addresses what rate disclosures are required specifically for inmate calling services, and states that "[p]roviders must clearly, accurately, and conspicuously disclose their interstate, intrastate, and international rates and Ancillary Service Charges to consumers on their Web sites or in another reasonable manner readily available to consumers." 47 C.F.R. § 64.6090 states that "[n]o [p]rovider shall offer [f]lat-[r]ate [c]alling for [i]nmate [c]alling [s]ervices."

[4] The Supreme Court of the United States has recognized that there is an "unsettled [ ] basis of the constitutional right of access to courts," and cites several cases that addressed access to the courts claims under different constitutional amendments. Christopher v. Harbury, 536 U.S. 403, 415, 415 n.12 (2002). Because Rindahl's access to the courts claim alleges interference with his communications, this Court construes it as an action under the First Amendment.

8

on other grounds by <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  To prevail on an access to courts claim, a prisoner must establish that he has sustained "an actual injury."  <u>Moore v. Plaster</u>, 266 F.3d 928, 933 (8th Cir. 2001) (citing <u>Klinger v. Dep't of Corr.</u>, 107 F.3d 609, 617 (8th Cir. 1997)).  To demonstrate "actual injury," the prisoner must show " 'that a nonfrivolous legal claim had been frustrated or was being impeded.' "  <u>Id.</u> (quoting <u>Johnson v. Missouri</u>, 142 F.3d 1087, 1089 (8th Cir. 1998)).  Here, Rindahl has not asserted facts sufficient to establish that he sustained an "actual injury."  <u>Id.</u>  He merely states that defendants have allegedly "obstruct[ed]" his attempts to contact attorneys and different courthouses.  Doc. 1 at 7, 9, 14.  Rindahl has not alleged facts to support that a " 'nonfrivolous legal claim' " has been interfered with, thus, his First Amendment access to court claim against the defendants is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Rindahl also challenges the fees and regulations surrounding the email system at the SDDOC.  <u>Id.</u> at 32-33.  He believes that there is a "needless" delay of receipt of the email and asserts that there should not be a character limitation to emails sent and received.  <u>Id.</u> at 33. Liberally construing the facts, Rindahl has asserted that the SDDOC defendants are violating his First Amendment right by restricting his speech.  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment[.]"  <u>Jones v. N.C. Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977).  "While prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system."  <u>Kaden v. Slykhuis</u>, 651 F.3d 966, 968 (8th Cir. 2011) (per curiam) (citation omitted).  In <u>Turner v. Safley</u>, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if it is reasonably related to

9

legitimate penological interests." 482 U.S. 78, 89 (1987). The <u>Turner</u> Court provided four factors
to determine whether the prison rule withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others, including inmates as
> well as non-inmates; and (4) the absence of a ready alternative to the regulation.

<u>Thongvanh v. Thalacker</u>, 17 F.3d 256, 259 (8th Cir. 1994). This standard applies to both incoming
and outgoing mail. <u>Id.</u> At the screening stage, this Court cannot say that Rindahl's First
Amendment speech claim against the SDDOC regarding his email is wholly without merit, and it
survives 28 U.S.C. § 1915A review.

### c.      Fifth Amendment

Rindahl claims that defendants have violated the Due Process Clause of the Fifth
Amendment. Doc. 1 at 34-35. The Due Process Clause of the Fifth Amendment applies to the
United States, whereas the Due Process Clause of the Fourteenth Amendment applies to the States.
<u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002). Defendants are state employees or arguably
arms of the state government, not agents of the United States. Therefore, Rindahl's due process
claims under the Fifth Amendment are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).

### d.      Eighth Amendment

Rindahl vaguely mentions the Eighth Amendment. Doc. 1 at 34-35. Liberally construing
the facts of Rindahl's Complaint, the Court believes that Rindahl might be asserting that the
defendants' alleged billing practices violated the Eighth Amendment's prohibition against
"excessive fines[.]" "The Eighth Amendment provides, '[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments inflicted.' " <u>Mills v. City of Grand</u>

10

Forks, 614 F.3d 495, 501 (8th Cir. 2010) (quoting U.S. Const. amend. VIII, § 1). The Excessive
Fines Clause will look at the " 'principle of proportionality: The amount of the [fine] must bear
some relationship to the gravity of the offense that it is designed to punish.' " Id. (quoting United
States v. Bajakajian, 524 U.S. 321, 334 (1998)). "For excessive fine claims, a plaintiff must show:
(1) gross disproportionality; and (2) the disproportionality is of such a level that the punishment is
more criminal than the crime." Id. (citing United States v. Dodge Caravan, 387 F.3d 758, 763 (8th
Cir. 2004). The "fines" or bills that Rindahl believes are unfair and unconstitutional are related to
his use of the telephone and have no relation to his underlying offense.  Further, Rindahl's
allegations do not contend that the alleged billing issues have resulted "in the denial of the minimal
civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an
excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994)
(internal quotation omitted). Thus, Rindahl's Eighth Amendment claims are dismissed under 28
U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e.      Fourteenth Amendment

Rindahl mentions the Fourteenth Amendment in his Complaint.  Doc. 1 at 34.  "The
Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty,
or property; and those who seek to invoke its procedural protection must establish that one of these
interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "[I]nmates have a property
interest in money received from outside sources." Mahers v. Halford, 76 F.3d 951, 954 (8th Cir.
1996). "Although the inmates' private interest in their personal funds is apparent, inmates are not
entitled to complete control over their money while in prison." Id.

The United States Supreme Court has held that "an unauthorized intentional deprivation of
property by a state employee does not constitute a violation of the procedural requirements of the

11

Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). A meaningful post deprivation remedy includes state common law remedies. Id. But whether Due Process requires a pre-deprivation hearing or instead only a post-deprivation remedy depends upon whether the deprivation was pursuant to an established state procedure (i.e., a jail regulation) or instead was an unauthorized act by the jailer. Walters v. Wolf, 660 F.3d 307, 313–14 (8th Cir. 2011). Here, Rindahl claims that the defendants have increased his bills without notice or reason, and that they refuse to show him his billing statements. Doc. 1 at 3-4. After review of his Complaint, the Court concludes that Rindahl's § 1983 deprivation of his personal property claim against all defendants is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A. Rindahl also alleges that the defendants are violating the South Dakota Constitution and South Dakota Codified Laws. Doc. 1 at 1. At this time, this Court will allow for those state claims to remain under supplemental jurisdiction, 28 U.S.C. § 1367, notwithstanding the vagueness of such assertions.

### f.    Conspiracy

Rindahl lists 42 U.S.C. § 1985 ("[c]onspiracy to interfere with civil rights") as a statute he believes defendants are violating. 42 U.S.C. 1985; Doc. 1 at 1. To plead a civil conspiracy under § 1983, Rindahl must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360-61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence

to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. See Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010). Rindahl has not asserted facts that show defendants agreed to deprive him of his constitutional rights. Rindahl's conspiracy claims against defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### g.   18 U.S.C. §§ 241-242, 1961-1964

Rindahl lists multiple federal criminal statutes in his Complaint that he believes defendants are violating. Doc. 1 at 1. This Court has ruled that there is no private right of action under the criminal statute of 18 U.S.C. § 241. Mousseaux v. United States Comm'r of Indian Affairs, 806 F.Supp. 1433, 1437 (D.S.D. 1992); see United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) (stating that "Courts repeatedly have held that there is no private right of action under [18 U.S.C.] § 241"); Scherer v. United States, 241 F. Supp. 2d. 1270, 1282 (D. Kan. Jan. 9, 2003) (collecting cases in support of dismissing the plaintiff's claimed 18 U.S.C.§ 1503 cause of action pursuant to 12(b)(6)); Shahin v. Darling, 606 F. Supp. 2d 525, 538-39 (D. Del. Mar. 31, 2009) (collecting cases supporting dismissal of all claims raised under 18 U.S.C.§ 1512 because the statute does not create a private right of action). This Court extends this rationale to the claims that Rindahl has brought under other sections of the United States Criminal Code. Thus, Rindahl's claims under 18 U.S.C §§ 241, 242, 1961-1964, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### h.   Sherman Act

Rindahl claims that defendants are violating the Sherman Act through their alleged "illegal partnership" and "billing fraud[.]" Doc. 1 at 13. Section 1 of the Sherman Act makes it illegal for

a contract to restrain trade or commerce. 15 U.S.C. § 1. Section 2 of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations[.] 15 U.S.C. § 2. "The specific intent [for § 2] require[s] [] 'an intent to control prices or to restrict competition unreasonably.' " SuperTurf, Inc. v. Monsanto Co., 660 F.2d 1275, 1283 (8th Cir. 1981) (quoting United States v. Empire Gas Corp., 537 F.2d 296, 298-99 (8th Cir. 1976)). "Similarly, a 'conspiracy to monopolize' claim requires a showing of defendant's specific intent to monopolize." Id. Rindahl has only raised bare assertions that the contract between SDDOC and GTL is an "illegal partnership" and considered to be fraudulent. He does not allege facts from which this Court could reasonably infer that defendants' contract has an intent to monopolize or restrain trade in any way. Accordingly, Rindahl's Sherman Act claims against all defendants are dismissed under dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## III.   Order

Accordingly, it is

ORDERED that Rindahl's motion to add defendants, Doc. 3, is denied as moot but the listed defendants, Global Tel Link Corporation (GTL), Jeff Haidinger, Steve Mantanoris, M. King, and L. Olsen are added to the lawsuit. It is further

ORDERED that Rindahl's motion to change venue, Doc. 4, is denied. It is further

ORDERED that Rindahl may not pursue a class action lawsuit as a pro se litigant. It is further

ORDERED that Rindahl's claims against Defendants Noem, Leidholt, Young, Ponto, Beniton, Fantroy, Robert, Ditmanson, Wynia, Welding, and Miller in their official capacities for money damages are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

14

ORDERED that Rindahl's First Amendment access to courts claim, Fifth Amendment claim, Eighth Amendments claims, Conspiracy claims, claims under the Sherman Act, and claims under 18 U.S.C. §§ 241-242, 1961-1964 against all defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Rindahl's non-monetary claims under the Federal Communications Act, Fourteenth Amendment due process clause, and state law survive § 1915A screening as against all defendants. It is further

ORDERED that Rindahl's First Amendment free speech claim against the SDDOC defendants and Kristi Noem survives 28 U.S.C. § 1915A screening. It is further

ORDERED that the Clerk shall send blank summons forms and U.S. Marshals Service Form (Form USM-285) to Rindahl so that he may cause the complaint to be served upon defendants. It is further

ORDERED Rindahl shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Rindahl will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED June 5ᵗʰ, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE