UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL,<br><br>                    Plaintiff,<br><br><br>          vs.<br><br>KRISTI NOEM, GOVERNOR FOR THE STATE OF SOUTH DAKOTA IN HER OFFICIAL AND UNOFFICIAL CAPACITY; MIKE LEIDHOLT, SECRETARY OF CORRECTIONS IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; DARIN YOUNG, WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; TROY PONTO, ASSOC. WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; JOHN BENTING, ASSOC. WARDEN, IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CLIFF FANTROY, DIRECTORY OF SECURITY IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CHAD ROBERT, MAJOR IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; KEITH DITMANSON, SECTION MANAGER IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CATHY WYNIA, WELDING, SSGT. INDENTIFICATION OFFICE IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; IAN MILLER, GLOBAL TEL LINK CORPORATION, STEVE MONTANARO[1], MIKE KING, LORAH OLSEN,<br><br>                    Defendants. | 4:20-CV-04044-RAL<br><br><br>**OPINION AND ORDER DENYING INJUNCTIVE RELIEF, GRANTING MOTIONS FOR PROTECTIVE ORDERS, GRANTING MOTION TO DISMISS AND DENYING JUDGMENT ON THE PLEADINGS, AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE** |

---

[1] Rindahl's complaint lists this defendant as Steve "Mantanoris," but the name has been changed in the caption to reflect the correct spelling.

Plaintiff Randy Lee Rindahl (Rindahl) filed this pro se lawsuit under 42 U.S.C. § 1983, the Federal Communications Act, and state law against numerous defendants. Doc. 1. The Defendants in this action fall into two categories. The Defendants in the first category are government officials, most of whom are employed with the South Dakota Department of Corrections (SDDOC). This Court will refer to them collectively as the SDDOC Defendants. The remaining Defendants are Global Tel Link Corporation (GTL), Steve Montanaro, Mike King, and Lorah Olsen. This Court will refer to them collectively as the GTL Defendants. Rindahl's claims relate to a contract between SDDOC and GTL under which GTL provides email, e-books, phone services, and streaming services to inmates like Rindahl. Doc. 1 at ¶ 2. There are currently several pending motions in this case. This Court will address each motion in the order in which it was filed.

## I.   Motions for Preliminary Injunction and Temporary Restraining Order

Rindahl has filed two motions for injunctive relief. The first motion is a motion for preliminary injunction in which he seeks to enjoin the SDDOC Defendants from withholding medical treatment. Doc. 14. The second motion is a motion for "imminent" temporary restraining order in which Rindahl seeks to enjoin the defendants from transferring him to Springfield, South Dakota, where there are no single-status cells available. Doc. 20. This Court interpreted Rindahl's motion for "imminent" temporary restraining order as a motion under Rule 65(b) of the Federal Rules of Civil Procedure and denied the motion. Doc. 24 at 3. However, this Court ordered the SDDOC Defendants to respond to Rindahl's temporary restraining order request at the same time it responded to Rindahl's other motion for preliminary injunction. Doc. 24 at 3. Having given the other party notice and an opportunity to respond, this Court treats Rindahl's motion for "imminent" temporary restraining order as a motion for preliminary injunction. The SDDOC Defendants

oppose both motions. Docs. 26, 27. This Court denies both of Rindahl's motions for injunctive relief.

Rule 65(a) of the Federal Rules of Civil Procedure governs entry of a preliminary injunction. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). "It is inappropriate to grant a preliminary injunction for matters 'lying wholly outside the issues in the suit.'" Brakeall v. Stanwick-Klemik, 4:17-CV-04101-LLP, 2019 WL 3807272, at *1 (D.S.D. Aug. 13, 2019) (quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)).

The Eighth Circuit has previously considered the relationship requirement in prisoner lawsuits. In Devose, an inmate filed a complaint alleging that he was being denied adequate medical treatment. 42 F.3d at 471. Then he filed a motion for a preliminary injunction in which he sought to enjoin the defendants from engaging in retaliatory conduct for filing his lawsuit. Id. The Eighth Circuit affirmed the district court's denial of the injunction, noting that it was "self-evident that Devose's motion for temporary relief [had] nothing to do with preserving the district court's decision-making power over the merits of Devose's 42 U.S.C. § 1983 lawsuit." Id. The Eighth Circuit further provided, "[t]o the contrary, Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief request in his . . . lawsuit." Id.; see also Martin v. Keitel, 205 F. App'x 925, 928–29 (3d Cir. 2006) (per curiam) (holding that plaintiff's request to enjoin defendants from retaliating against him was legally deficient because it had no relation to the underlying claim in his § 1983 suit).

Here, in Rindahl's first motion for injunctive relief, he alleges that the SDDOC Defendants are retaliating against him for filing his lawsuit. Doc. 14 at 2. He claims that they have withheld

medical treatment for his left knee and ribs as well as denied him a COVID-19 test. Doc. 14 at 2–4. He asks this Court to issue an order enjoining the SDDOC Defendants from obstructing his medical treatment. Doc. 14 at 4. But in this case, his underlying claims involve violations of the First and Fourteenth Amendments, the Federal Communications Act, and state law as it relates to the telecommunication services he receives in prison. Doc. 1. The new assertions of mistreatment in his motion for injunctive relief are entirely different from the claim raised and the relief requested in his complaint. Because Rindahl has not established a relationship between the conduct alleged in the complaint and the injury complained of in the motion for preliminary injunction, Rindahl's motion for preliminary injunction is denied.

Rindahl's second motion for injunctive relief, Doc. 20, suffers from the same problem. In his motion for imminent temporary restraining order, Rindahl alleges that, in retaliation for his lawsuit, the SDDOC Defendants have ordered that he be transferred from the South Dakota State Penitentiary to the Mike Durfee State Prison in Springfield, South Dakota. Doc. 20 at 2. He currently is under single-cell status, but as there are no single cells available in Springfield, he would be forced to share a cell. Doc. 20 at 2. Again, these assertions of retaliation and mistreatment are unrelated to the claims and relief sought in his complaint. Therefore, this motion is denied.

## II.     Motion for Protective Order

The SDDOC Defendants have filed two motions for protective orders to stay discovery, Docs. 32, 49, and memorandums in support thereof, Docs. 33, 50. The SDDOC Defendants contend that discovery should be stayed until the Court determines whether the SDDOC Defendants are entitled to dismissal under the doctrine of qualified immunity. Although the SDDOC Defendants have not filed a motion for summary judgment, they have made clear that they intend to do so. This Court grants both motions for protective orders.

4

Cases from the Supreme Court of the United States stress that "[q]ualified immunity is an immunity from suit, not simply from liability," Janis v. Biesheuvel, 428 F.3d 795, 800 (8th Cir. 2005) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), and thus the immunity defense should be decided as early in the case as possible, see Harlow v. Fitzgerald, 457 U.S. 800, 816–19 (1982); O'Neil v. City of Iowa City, 496 F.3d 915, 917 (8th Cir. 2007). This immunity from suit applies to discovery because it "can be peculiarly disruptive of effective government." Mitchell, 472 U.S. at 526. Qualified immunity protects government officials from the burdens of broad discovery. Wilson v. Northcutt, 441 F.3d 586, 590 (8th Cir. 2006). Of course, the "purpose in moving for summary judgment, under the privilege of qualified immunity, is to avoid having government officers subjected to the expense and delay of discovery." Fitzgerald v. Patrick, 927 F.2d 1037, 1039 (8th Cir. 1991) (per curiam). In light of such considerations, this Court has previously stayed discovery when defendants intend to file motions for summary judgment based on qualified immunity grounds. See Gard v. Kaemingk, Civ. No. 13-4062-LLP, 2014 WL 4092776, at *4 (D.S.D. Aug. 18, 2014) (granting defendant's motion to stay discovery in light of their prospective summary judgment motion to resolve the issue of sovereign immunity); Smith v. Woodward, No. Civ. 10-4053-KES, 2010 WL 3937139, at *1 (D.S.D. Oct. 4, 2010) (same).

Here, the SDDOC Defendants have asserted qualified immunity as an affirmative defense in their answer to Rindahl's suit. Doc. 16 at 5. Further, they intend to file a motion for summary judgment based on qualified immunity. Doc. 32 at 2. In the interim, Rindahl has already sought numerous documents, see Doc. 33 at 2–4, demonstrating that "concern with the burden of discovery on public officials is well founded." Smith, 2010 WL 3937139, at *1. This Court concludes that the qualified immunity issues should be resolved before the SDDOC Defendants

5

are subject to discovery. Therefore, their motions for protective orders are granted, provided they promptly file their motion for summary judgment.

### III.   Motion to Dismiss and Motion for Judgment on the Pleadings

At the outset, this Court conducted an initial screening of Rindahl's complaint under 28 U.S.C. § 1915A. Doc. 6. While many of Rindahl's claims were dismissed, his due process claim under the Fourteenth Amendment as well as his claims under the Federal Communications Act and state law survived as against all defendants. Doc. 6. In that same opinion and order, this Court granted Rindahl's motion to amend his complaint to add Defendants GTL, Steve Montanaro, Mike King, and Lorah Olsen to the lawsuit, Doc. 6 at 1. Thereafter, Rindahl filed a motion for address assistance as it relates to the GTL Defendants. Doc. 36.

This Court then ordered the GTL Defendants to file an answer or otherwise respond to Rindahl's Complaint by August 14, 2020. Doc. 24. The GTL Defendants responded with a motion to dismiss Rindahl's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Rindahl has failed to state a claim upon which relief can be granted. Doc. 44. Thereafter, the GTL Defendants moved for a protective order seeking a stay of discovery until this Court ruled on the motion to dismiss. Doc. 51. Although Rindahl did not file anything in opposition to the motion to dismiss, he did move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Doc. 53. This Court grants the GTL Defendants' motion to dismiss and denies Rindahl's motion for judgment on the pleadings. This Court also denies the GTL Defendants' motion for a protective order and Rindahl's motion for address assistance.

### A.  Standard of Review

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a

plaintiff's legal conclusions.[2] Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

The Eighth Circuit requires district courts to construe pro se complaints liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. at 915. Importantly, however, this rule of liberal construction does not excuse a pro se plaintiff from alleging enough facts to support his claims. Id. at 914. That is, even though

---

[2] While some of Rindahl's claims in his complaint survived initial screening under 28 U.S.C. § 1915A, Doc. 6, such claims are still susceptible to a motion to dismiss under Rule 12(b)(6). Braun v. Hanson, No. 18-cv-3355 (JNE/ECW), 2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020) (rejecting the argument that a prisoner's survival of § 1915A's screening requirements bars defendants from moving to dismiss); Flying Horse v. Hansen, 4:16-CV-04119-KES, 2019 WL 6458179, at *1 n.1 (D.S.D. Jan. 22, 2019) (noting that the standards for screening and a Rule 12(b)(6) motion are similar but concluding that screening does not preclude later Rule 12 motions).

a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

When reviewing a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard as that on a motion to dismiss under Rule 12(b)(6). Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." Ashley Cnty. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Of course, a party may only move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c); Bear v. Cnty. of Jackson, No. 5:14-CV-5059-KES, 2015 WL 1969760, at *3, n.4 (D.S.D. May 1, 2015). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." Hesford v. Jefferson Capital Sys., No. 18-cv-100-CJW, 2019 WL 124823, at *1 (N.D. Iowa Jan. 7, 2019) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2018)).

## B.  Discussion

Because the GTL Defendants have not yet filed an answer to Rindahl's complaint, the pleadings are not closed, and therefore, Rindahl's motion for judgment on the pleadings is premature. Therefore, his motion for judgment on the pleadings cannot be granted.  Because there is no distinction between the standard of review for Rule 12(b)(6) motions and Rule 12(c) motions, this Court will construe Rindahl's motion for judgment on the pleadings as his opposition to the GTL Defendants' motion to dismiss. See Wright & Miller, supra, § 1368 ("Because of the similarity between the Rule 12(c) and Rule 12(b) standards, courts typically will construe a premature Rule 12(c) motion as if it were brought under Rule 12(b) . . . ."). The GTL Defendants assert that Rindahl has failed to state a claim under 42 U.S.C. § 1983 or state law or the Federal

Communications Act. Doc. 45. They ask this Court to dismiss Rindahl's claims with prejudice.[3] This Court will review each claim in turn.

### 1. Section 1983

The GTL Defendants contend that Rindahl has failed to allege sufficient facts to state a claim for relief under § 1983. Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Thus, to obtain relief under § 1983, a plaintiff must allege (1) a deprivation of a constitutionally protected federal right, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009).

First, Rindahl must allege a deprivation of a constitutionally-protected federal right as § 1983 does not grant plaintiffs relief for violations of state law. Nicolaison v. Milczark, 26 F. App'x 596, 597 (8th Cir. 2002) (holding that plaintiff could not seek relief in federal court under § 1983 for violations of Minnesota law); Marler v. Missouri State Bd. Of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996) ("[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." (citation omitted)). Further, the failure to abide by procedures required under state law does not automatically constitute a due process violation under the Fourteenth Amendment. Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) (rejecting plaintiff's argument that failure to follow state procedural rules amounts to a due process violation under the Constitution, reasoning that "the Due Process Clause does not federalize state-law procedural requirements."). As the Eighth Circuit has emphasized, "violations of state laws, state-

---

[3] Dismissals with prejudice under Rule 12(b)(6) are appropriate when "no amount of re-pleading will cure the deficiencies." Vigeant v. Meek, 352 F. Supp. 3d 890, 900 (D. Minn. 2018) (cleaned up and citation omitted).

agency regulations, and, more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983." Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995).

Here, Rindahl has failed to allege a deprivation of a constitutionally protected federal right. He seems to vaguely allege that he was denied due process under the Fourteenth Amendment because he claims that GTL and the SDDOC did not follow the prison's policy or state law in handling his grievances about the services he was receiving. Doc. 1 at ¶¶ 15, 19, 28, 59, 60; see also Doc. 1 at 35–36. Specifically, he asserts that GTL, in conjunction with the SDDOC, violated SDCL § 1-15-1.8. Doc. 1 at ¶¶ 15, 19, 28. However, SDCL § 1-15-1.8 merely gives all rules and regulations adopted by the SDDOC legal effect, and Rindahl does not point to any state rule or regulation that he claims the GTL Defendants to have violated. Thus, he has scarcely alleged a violation of state law let alone a constitutionally-protected federal right. A violation of state rules and regulations of course does not automatically give rise to a due process violation under the Fourteenth Amendment.

Even assuming Rindahl had alleged a violation of a constitutionally-protected federal right, he still must allege facts showing that GTL and its employees are acting under the color of state law to state a § 1983 claim. "Private actors may incur section 1983 liability only if they are willing participants in a joint action with public servants acting under color of state law." Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999); see also Dennis v. Sparks, 449 U.S. 24, 27 (1980) (stating that a private actor is considered a state actor if the private actor is a "willful participant in joint action with the State or its agents"). A person may fairly be said to be a state actor if they "'acted together with or . . . obtained significant aid from state officials' in furtherance of the challenged action." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). To establish liability under

§ 1983, a plaintiff "must establish, at the very least, an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States." Johnson, 172 F.3d at 536; see West, 487 U.S. at 49. State action exists "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." Pariser v. Christian Health Care Sys., Inc., 816 F.2d 1248, 1252 (8th Cir. 1987) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Parker v. Boyer, 93 F.3d 445, 447–48 (8th Cir. 1996) (cleaned up) (quoting West, 487 U.S. at 49).

A private actor will not be deemed as acting under the color of state law merely because it performs a public contract. Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Several federal courts have held that GTL does not become a state actor simply because it contracts with a department of corrections or some other public entity to provide telecommunications services. McNeil v. Global Tel-Link, No. 3:15-cv-01243, 2017 WL 5248377, at *1 (M.D. Pa. Nov. 13, 2017) (dismissing plaintiff's complaint in part because GTL "is not a state actor for Section 1983 purposes" based on the mere fact that it provided telephone services to prisoners under a contract with the DOC); Anderson v. Sposato, No. 11-CV-5663 (SJF)(WDW), 2013 WL 2023229, at *3 (E.D.N.Y. May 9, 2013) (dismissing § 1983 action against GTL because it "was not rendered a state actor, or acting under color of state law, merely by virtue of its public contract with the [state government]."); Evans v. Skolnik, No. 3:08-cv-00353-RCJ-VPC, 2009 WL 3763041, at *5 (D. Nev. Nov. 5, 2009) (dismissing plaintiff's

claim against GTL because "[p]roviding services that the state would not necessarily provide does not automatically render the acts of privately owned enterprises attributable to the state"). In fact, this Court in a case very similar to the one at hand dismissed a § 1983 claim against GTL, reasoning that "a private entity can be subject to state regulation, rely on public contracts, and even perform a public function without acting under color of state law for purposes of a § 1983 claim." Shaw v. Kaemingk, No. 4:17-CV-04116-KES, 2018 WL 3682502, at *3 (D.S.D. Aug. 2, 2018).

Rindahl has not alleged sufficient facts that would allow this Court to reasonably infer that GTL or its employees were acting under the color of state law. In his complaint, Rindahl alleges only that GTL and SDDOC have entered into a contract in which GTL has agreed to provide telecommunication services to inmates under SDDOC custody, Doc. 1 at ¶¶ 1–4, and that to carry out this contract, "GTL personnel work directly upon SD DOC grounds," Doc. 1 at ¶ 7. In his motion for judgment on the pleadings, Rindahl merely reiterates this contractual relationship to support his argument that GTL and its employees are state actors. Doc. 53 at 2–3, 9. GTL cannot be deemed a state actor merely by virtue of its contract with the SDDOC. Thus, even if Rindahl had alleged a deprivation of a constitutionally protected federal right, his claim still fails because GTL and its employees are not state actors for purposes of § 1983. Rindahl has failed to state a claim under § 1983 that is plausible on its face. He has also failed to allege sufficient facts that GTL violated state law. For these reasons, Rindahl's Section 1983 claim and state law claims against the GTL Defendants are dismissed with prejudice.

### 2. Federal Communications Act

The GTL Defendants also assert that Rindahl has failed to state a claim under the Federal Communications Act. Under 47 U.S.C. § 201(b), "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable,

and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." The Supreme Court of the United States has noted that the "FCC has long implemented § 201(b) through the issuance of rules and regulations." Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc., 550 U.S. 45, 53 (2007). "To violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute." All. Commc'ns Coop., Inc. v. Glob. Crossing Telecomms., Inc., 663 F. Supp. 2d 807, 835 (D.S.D. Sept. 29, 2009) (cleaned up) (quoting Glob. Crossing Telecomms., Inc., 550 U.S. at 54). Here, Rindahl alleges that the GTL Defendants have engaged in unreasonable and unjust billing practices as a general matter and because he claims the GTL Defendants have violated 47 C.F.R. §§ 64.2401[4], 64.6090[5], and 64.6110[6]. Sections 206 and 207 of the Federal Communications Act permit a plaintiff to sue for damages for violations of the Federal Communications Act. See 47 U.S.C. §§ 206, 207. Generally, the statute of limitations to bring such an action is two years from the time the action accrues.[7] 47 U.S.C. § 415 (b)–(c).

---

[4] Section 64.2401 sets forth what content must be contained within a billing statement, and § 64.2401(b) provides, "[c]harges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered."

[5] Section 64.6090 states, "[n]o Provider shall offer Flat-Rate Calling for Inmate Calling Services." Flat-rat calling is defined as "a calling plan under which a Provider charges a single fee for an Inmate Calling Services call, regardless of the duration of the call." 47 C.F.R. § 64.6000(h).

[6] Section 64.6110 declares, "[p]roviders must clearly, accurately, and conspicuously disclose their interstate, intrastate, and international rates and Ancillary Service Charges to consumers on their Web sites or in another reasonable manner readily available to consumers."

[7] In his complaint, Rindahl references numerous incidents that took place before March 9, 2018. See Doc. 1 at ¶ 38 (stating that GTL's billing practice of charging allegedly excessive rates has gone on for three years). Further, he alleges that he requested an inquiry into so-called "fraudulent billing practices" as early as August 2015. Doc. 1 at ¶ 38. See Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Court, 4:10-CV-04110-KES, 2015 WL 12670415, at *3 (D.S.D. June 2, 2015) (noting that the FCC has stated "that a cause of action accrues upon the discovery of the right or wrong or of the facts on which such knowledge is chargeable in law") (cleaned up and citation omitted). To the extent that Rindahl relies on billing practices before March 9, 2018, his Federal Communications Act claim is barred by § 415.

In <u>Rindahl v. Oliver</u>, 1:19cv206 (TSE/MSN), 2020 WL 5901693 (E.D. Va. Mar. 20, 2020), Rindahl brought a virtually identical lawsuit against GTL and its employees in the United States District Court for the Eastern District of Virginia. In his complaint there, he alleged that GTL violated the Federal Communications Act because he was charged more for his telephone services than he expected to be. <u>Id.</u> at *2. Specifically, he complained that there was a discrepancy between the rates and actual fees that he was charged. <u>Id.</u> However, in his complaint, he alleged the difference between the stated rate and actual amount paid came from a Federal Universal Service Fund (FUSF) fee.[8] <u>Id.</u> In determining whether to grant reconsideration of the dismissal of Rindahl's complaint, the district court concluded his claim was not meritorious. <u>Id.</u> The district court stated that the "imposition of the FUSF tax—itself a creature of the FCC—cannot be unreasonable under the meaning of the FCA." <u>Id.</u> at *2, n.2.

Here, Rindahl once again complains that he is being charged more than he expected to be because there was a discrepancy between the rates in the contract and the actual amount that he paid. Doc. 1 at ¶¶ 6–8. In his complaint, Rindahl attributes the discrepancy to the FUSF fee. Doc. 1 at ¶¶ 6–8, 11, 90–92. As the Eastern District of Virginia has held, the FUSF fee is authorized by the FCC[9] and is not an unjust, unreasonable, or unlawful charge. Thus, Rindahl has not stated a

---

[8] The Federal Universal Service Fund was created to provide individuals living in rural or high-costs areas with access to telecommunication services. <u>Virgin Mobile USA, L.P. v. Keen</u>, 447 F. Supp. 3d 1071, 1083 (D. Kan. 2020). Certain telecommunication companies must contribute to the fund, and the FCC allows, but does not require, telecommunication companies to pass that amount onto the consumer in the form of additional fees. 47 C.F.R. § 54.712; <u>Janda v. T-Mobile, USA, Inc.</u>, No. C 05-03729 JSW, 2009 WL 667206, at *1, n.1 (N.D. Cal. Mar. 13, 2009).

[9] Under 47 C.F.R. § 64.6070, "[n]o Provider shall charge any taxes or fees to users of Inmate Calling Services, *other than those permitted under § 64.6020, Mandatory Taxes, Mandatory Fees, or Authorized Fees.* (emphasis added). An authorized fee is "a government authorized, but discretionary, fee which a Provider must remit to a federal, state, or local government, and which a Provider is permitted, but not required, to pass through to Consumers." 47 C.F.R. § 64.6000(b). This would include a FUSF fee. <u>See</u> 47 C.F.R. § 54.712.

claim under 47 U.S.C. § 201(b) generally. Nor has Rindahl stated a claim under any FCC regulations either. Rindahl has not stated a claim under 47 C.F.R. § 64.6090 because he does not allege that GTL has engaged in flat-rate billing. Indeed, he repeatedly states that he was charged by the minute, albeit at a rate higher than he expected to be charged. Doc. 1 at ¶¶ 6–8. He also does not state a claim under 47 C.F.R. §§ 64.2401 and 64.6110 because he does not allege that GTL failed to disclose or describe the FUSF fee in his billing statements. In short, Rindahl has failed to allege any facts that the GTL Defendants violated the Federal Communications Act. Therefore, this claim is dismissed with prejudice. Because all claims against the GTL Defendants are dismissed, both GTL Defendants' motion for a protective order to stay discovery, Doc. 51, and Rindahl's motion for address assistance, Doc. 36, are denied as moot.

## IV.    Motion to Strike

After the SDDOC Defendants filed an answer to the complaint, Doc. 16, Rindahl filed a response to the SDDOC Defendants' answer, Doc. 28. The SDDOC Defendants filed a motion to strike or disregard plaintiff's answers to affirmative defenses as well as a memorandum in support thereof. Docs. 46, 47. This Court grants in part and denies in part Defendants' motion to strike.

"Rule 7(a) of the Federal Rules of Civil Procedure lists all of the allowable pleadings in a case." United States v. 2035 Inc., No. 5:14-cv-05075-KES, 2017 WL 1740217, at *4 (D.S.D. May 4, 2017). Under Rule 7(a), only the following pleadings are allowed: (1) a complaint, (2) an answer to a complaint, (3) an answer to a counterclaim designated as a counterclaim, (4) an answer to a crossclaim, (5) a third-party complaint, (6) an answer to a third-party complaint, and (7) a court-ordered reply to an answer. Fed. R. Civ. P. 7(a). Aside from the pleadings listed above, "no other pleadings shall be allowed." Mehrkens v. Blank, No. 05-1384 (RHK/JSM), 2005 WL 8164483, at *3 (D. Minn. Dec. 27, 2005) (cleaned up). Thus, absent a court order, "[a] reply to an answer

15

ordinarily is unnecessary and improper in federal practice." Johnson v. Kaemingk, 4:17-CV-04043-LLP, 2020 WL 376589, at *1 (D.S.D. Jan. 23, 2020) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1185 (3d ed. 2020)); see also Akintunde v. Bd. of Regents of the Univ. of Nebraska – Omaha, No. 4:15CV3011, 2015 WL 5023570, at *9 (D. Neb. Aug. 20, 2015) ("A plaintiff may not reply to an answer as a matter of right." (cleaned up)).

This Court never ordered or allowed Rindahl to file a response to the SDDOC Defendants' answer. Therefore, his response, Doc. 28, is not properly before the Court. While the Court acknowledges this fact, it is nonetheless more appropriate to disregard, rather than to strike, the response. See Owen v. Young, No. 4:15-CV-04087-KES, 2016 WL 915065, at *2 (D.S.D. Mar. 10, 2016) (denying defendants' motion to strike, reasoning that it was more appropriate to disregard, rather than strike, the plaintiff's objections to the defendants' answer). Thus, to the extent that Defendants request this Court to disregard Rindahl's response, the SDDOC Defendants' Motion, Doc. 46, is granted. But to the extent that Defendants request that Rindahl's response be stricken from the record, Defendants' Motion, Doc. 46, is denied. Because this Court disregards Rindahl's response altogether, it need not consider his request for pretrial summary judgment or judgment on the pleadings contained therein.

## V.       Conclusion

For the foregoing reasons, it is hereby

ORDERED that Rindahl's Motion for Preliminary Injunction, Doc. 14, is denied.

ORDERED that Rindahl's Motion for Imminent Temporary Restraining Order, Doc. 20, which this Court construes as a motion for preliminary injunction, is denied.

ORDERED that the SDDOC Defendants' Motion for Protective Order, Doc. 32, is granted.

ORDERED that Rindahl's Motion for Address Assistance, Doc. 36, is denied.

ORDERED that the GTL Defendants' Motion to Dismiss, Doc. 44, is granted.

ORDERED that the SDDOC Defendants' Motion to Strike, Doc. 46, is granted in part and denied in part.

ORDERED that the SDDOC Defendants' Motion for Protective Order, Doc. 49, is granted.

ORDERED that the GTL Defendants' Motion for Protective Order, Doc. 51, is denied.

ORDERED that Rindahl's Motion for Judgment on the Pleadings, Doc. 53, is denied.


DATED this 16th day of November, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE