UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RANDY LEE RINDAHL,<br><br>Plaintiff,<br><br>vs.<br><br>KRISTI NOEM, GOVERNOR FOR THE STATE OF SOUTH DAKOTA IN HER OFFICIAL AND UNOFFICIAL CAPACITY; MIKE LEIDHOLT, SECRETARY OF CORRECTIONS IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; DARIN YOUNG, WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; TROY PONTO, ASSOC. WARDEN IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; JOHN BENTING, ASSOC. WARDEN, IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CLIFF FANTROY, DIRECTORY OF SECURITY IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CHAD ROBERT, MAJOR IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; KEITH DITMANSON, SECTION MANAGER IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; CATHY WYNIA,  WELDING, SSGT. INDENTIFICATION OFFICE IN HIS OFFICIAL AND UNOFFICIAL CAPACITY; IAN MILLER, GLOBAL TEL LINK CORPORATION, STEVE MONTANARO, MIKE KING, LORAH OLSEN,<br><br>Defendants. | 4:20-CV-04044-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR RULE 11 SANCTIONS AND MOTION FOR RELIEF FROM JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Randy Lee Rindahl (Rindahl) filed this pro se lawsuit against numerous defendants. Doc. 1. The Defendants in this action fall into two categories. The Defendants in the

1

first category are government officials, most of whom are employed with the South Dakota Department of Corrections (SDDOC). This Court refers to them collectively as the SDDOC Defendants. The other Defendants are Global Tel Link Corporation (GTL), Steve Montanaro, Mike King, and Lorah Olsen. This Court refers to them collectively as the GTL Defendants. Rindahl's claims relate to a contract between SDDOC and GTL under which GTL provides email, e-books, phone services, and streaming services to inmates like Rindahl. Doc. 1 at ¶ 2.

This Court conducted a 28 U.S.C. § 1915A screening of Rindahl's complaint and dismissed most of his claims. Doc. 6. The claims that survived were his First and Fourteenth Amendment claims under 42 U.S.C. § 1983, his claims under the Federal Communications Act, and his state law claims. Doc. 6. The SDDOC Defendants filed an answer to Rindahl's complaint, Doc. 16, and the GTL Defendants responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Doc. 44. In an opinion and order addressing multiple motions in this case, this Court granted the GTL Defendants' motion to dismiss. Doc. 56. This Court also granted the SDDOC Defendants' motions for protective orders as well as their motion to stay discovery. Doc. 56. Since that time, there have been additional motions filed in this case. This Court will address each motion in the order in which it was filed.

I.   **Motion for Rule 11 Sanctions Against SDDOC Defendants**

Rindahl filed a motion for Rule 11 sanctions against the SDDOC Defendants, claiming that they had committed fraud upon the Court. Doc. 57. Rule 11 sanctions may be warranted if a pleading: (1) is "presented for any improper purpose, such as to harass or to cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contains claims, defenses, and other legal contentions that are not supported by existing law or any nonfrivolous argument for extending, modifying, or reversing existing law; (3) contains allegations or factual contentions that lack

evidentiary support; (4) or contains denials of factual contentions that are not warranted on the evidence. Fed. R. Civ. P. 11(b); Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1008 (8th Cir. 2006).

In the SDDOC Defendants' answer to Rindahl's complaint, the SDDOC Defendants raised failure to exhaust administrative remedies as an affirmative defense. Doc. 16 at ¶ 6. Rindahl claims that this defense lacks evidentiary support and points to evidence that he did exhaust his administrative remedies. Doc. 57 at 2–3. This Court will discuss whether Rindahl failed to exhaust his administrative remedies in more detail in the Court's consideration of the SDDOC Defendants' motion for summary judgment. For now, it suffices to say that the SDDOC Defendants have not violated Federal Rule of Civil Procedure 11(b). There is evidentiary support for the assertion that Rindahl failed to exhaust his administrative remedies. Rindahl's motion for Rule 11 sanctions against the SDDOC Defendants is denied.

## II. Motions for Relief from Prior Judgment, for Rule 11 Sanctions, and to Strike Against GTL Defendants

Rindahl next filed a motion for relief from prior judgment as well as a motion for Rule 11 sanctions against the GTL Defendants. Docs. 60, 61. The GTL Defendants filed memoranda in opposition. Docs. 62, 66. Rindahl then filed a motion to strike the memorandum in opposition to Rule 11 sanctions. Doc. 76. The GTL Defendants filed another memorandum in opposition to Rindahl's motion to strike. Doc. 80. This Court denies all of Rindahl's motions concerning the GTL Defendants.

Rindahl contends that he is entitled to relief from prior judgment under Federal Rule of Civil Procedure 60(b)(1), (3), (4), (6) and (d)(3). Doc. 60. Rule 60(b) allows a court to relieve a party from its prior judgment "based on certain enumerated circumstances (for example, fraud,

3

changed conditions, and the like)." Broadway v. Norris, 193 F.3d 987, 990 (8th Cir. 1999). "It is not a vehicle for simple reargument on the merits." Id. "Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (cleaned up and citation omitted).

Although Rindahl cites to numerous subsections of Rule 60, the main thrust of his argument is that the GTL Defendants committed fraud upon the Court in their arguments in support of their motion to dismiss. Under Rule 60(b)(3), courts can provide a party with relief from a final judgment if the judgment results from "fraud, misrepresentation, or some other type of misconduct by an adverse party." United States v. 2035 Inc., No. 5:14-CV-05075-KES, 2017 WL 1740217, at *5 (D.S.D. May 4, 2017) (citing Fed. R. Civ. P. 60(b)(3)). "To prevail on a Rule 60(b)(3) motion, the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case." Id. (cleaned up and quoting United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 935 (8th Cir. 2006)).

While relief under Rule 60(b)(3) and Rule 60(d)(3) is similar, relief under Rule 60(d)(3) is even more difficult to obtain. Superior Seafoods, Inc. v. Tyson Foods, Inc., 620 F.3d 873, 878 (8th Cir. 2010) ("The extraordinary relief afforded pursuant to Rule 60(d) is more difficult to obtain than relief that might be available through a timely Rule 60(b) motion, but it remains the same type of relief—relief from an otherwise final judgment."). Rule 60(d)(3) authorizes a court to "set aside a judgment for fraud on the court." Relief under Rule 60(d) is only available when "it would be manifestly unconscionable to allow the judgment to stand." Superior Seafoods, Inc., 620 F.3d at 878 (cleaned up and citation omitted).

Rindahl falls far short of the exacting standards for after-the-fact equitable relief. Rindahl claims that the GTL Defendants engaged in fraud and misrepresentation; however, he fails to point to any facts that the GTL Defendants misrepresented to the Court. Indeed, the Court dismissed all of Rindahl's claims under Federal Rule of Civil Procedure 12(b)(6); thus, this Court was required to assume that the facts as they were alleged in Rindahl's complaint were true. This Court did not rely on any factual representations made by the GTL Defendants in dismissing Rindahl's claims against those Defendants. Rather, Rindahl merely attempts to relitigate issues that have already been decided by this Court. Dissatisfaction with the outcome is no basis to set aside this Court's previous judgment; therefore, Rindahl's motion for relief from judgment must be denied. For the same reasons, Rindahl's motion for Rule 11 sanctions and motion to strike, Docs. 61, 76, are denied.

### III. Motion for Summary Judgment

As discussed above, this Court conducted an initial screening of Rindahl's complaint under 28 U.S.C. § 1915A. Doc. 6. While most of Rindahl's claims were dismissed[1], his First Amendment claim, Fourteenth Amendment claim, and his claims under the Federal Communications Act survived as against the SDDOC Defendants. Doc. 6. The SDDOC Defendants have filed a motion for summary judgment on all of these remaining claims. Doc. 69. Rindahl has responded in opposition. Doc. 79. This Court now grants summary judgment in favor of the SDDOC Defendants.

### A. Standard of Review

---

[1] The SDDOC Defendants seek summary judgment on Rindahl's claims against them in their official capacities. Doc. 70 at 5. However, these claims have already been dismissed by this Court in its § 1915A Screening. See Doc. 6 at 6–7.

5

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Gacek, 666 F.3d at 1145. In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

### B. Discussion

#### 1. Exhaustion of Administrative Remedies

First, the SDDOC Defendants assert that they are entitled to summary judgment because Rindahl has failed to exhaust his administrative remedies. Doc. 70 at 5–11. The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all "available" administrative remedies before challenging prison conditions under § 1983 or any other federal law. 42 U.S.C. § 1997e(a); Porter

v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

A prisoner properly exhausts the available administrative remedies when he "complete[s] the administrative review process in accordance with the applicable procedural rules." Jones v. Bock, 549 U.S. 199, 218 (2007) (citation omitted). District courts must decide whether a prisoner exhausted his administrative remedies before addressing the merits of his claims. Benjamin v. Ward Cnty., 632 F. App'x 301, 301 (8th Cir. 2016) (per curiam). The SDDOC's grievance procedure has two steps. Doc. 70-1 at 6–8. An inmate must first try to resolve his complaint informally, either by resolving the matter verbally with staff or by submitting a Request for Informal Resolution form. Doc. 70-1 at 6–7. If that does not work, the inmate must proceed to the second step, which requires him to file a Request for Administrative Remedy form. Doc. 70-1 at 7–8.

Rindahl does not appear to dispute the assertion that he failed to complete the two steps of the SDDOC's grievance procedure as it relates to the surviving claims in this lawsuit. Rather, Rindahl first argues that there were no available administrative remedies for him to exhaust. Doc. 79 at 5–8; see Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (a prisoner need only exhaust "available" administrative remedies). To support this argument, Rindahl points to SDDOC Policy 1.3.E.2, Administrative Remedy for Inmates. See Doc. 70-1. In particular, he highlights the subsection entitled "Issues That May be Addressed Through Administrative Remedy," which lists five categories of grievances that prisoners may raise through the administrative process. Doc. 70-1 at 4–6. Rindahl contends that none of his claims fit within the five categories listed in the policy, and therefore, he was not afforded the opportunity to exhaust his claims through the administrative

process. However, one of the issues that prisoners may address through the administrative process is all grievances relating to "[p]olicies, procedures, rules, directives or conditions of care and supervision that are within the authority of the DOC and adversely impact the inmate personally." Doc. 70-1 at 5. Rindahl's claims fall within this category. His claims are centered around the SDDOC's policy and procedure in administering phone and internet services to prisoners like himself. Thus, Rindahl could have utilized the administrative process to remedy his concerns.

And indeed, Rindahl did take advantage of the administrative process numerous times. But as concerns his claims in this case, Rindahl either did not complete all of the steps of the SDDOC's grievance procedure or completed such steps incorrectly. For example, Rindahl submitted an Informal Resolution Request complaining that he had been overcharged for a phone call. The SDDOC issued an Informal Resolution Response, Doc. 70-4, noting that he was charged the correct amount and would not be reimbursed for the call. Rindahl could have proceeded to the second step in the administrative process and filed a Request for Administrative Remedy, but failed to do so. Doc. 72 at ¶¶ 41–42. Similarly, Rindahl submitted another Informal Resolution Request complaining that the SDDOC had delayed and interfered with his email access. Doc. 70-5 at 2–3. The SDDOC responded that tablet use was voluntary and that use of tablets was conditioned on prisoners' consent that the SDDOC may monitor and investigate prisoners' communication and approve all emails before they are sent. Doc. 70-5 at 1. Again, Rindahl never filed a Request for Administrative Remedy. Doc. 72 at ¶¶ 43–44. Finally, there were other times in which Rindahl submitted Informal Resolution Requests, but such requests were returned to him because they were illegible. Doc. 72 at ¶¶ 35–37. When a request is illegible, the prisoner is able to make changes and resubmit the request for reconsideration. Doc. 72 at ¶ 38. However, Rindahl never did so.

That Rindahl raised any of these claims through the administrative process, albeit incompletely or incorrectly, underscores that administrative remedies were available to him. Significantly, none of Rindahl's requests were rejected on the basis that such requests were outside the scope of issues that may be addressed by administrative remedy. Indeed, if that were the case, the SDDOC is authorized to complete the Notice of Rejection form and check the box that indicates that the prisoner's complaint "relates to actions or decisions that are outside the jurisdiction of the DOC or the scope of the DOC policy 1.3.E.2 Administrative Policy for Inmates." Doc. 70-2 at 1. Yet in every instance in which Rindahl complained of his phone or internet services, his request was either rejected on the merits or because his request was illegible.

Rindahl also argues that he exhausted his administrative remedies through other means. Specifically, he points out that he requested meetings with various individuals to discuss his concerns. See Doc. 79-1 at 21–52. But such requests are only the first step in the administrative process. To fully exhaust his claims, Rindahl still needed to complete the second step and file a Request for Administrative Remedy. See King v. Dingle, 702 F. Supp. 2d 1049, 1066–68 (D. Minn. 2010) (finding that informal kite requests were insufficient to exhaust administrative remedies; rather, the prisoner needed to correctly complete all steps in the grievance procedure). In short, Rindahl must fully comply with the administrative process set forth by the SDDOC in order to exhaust his administrative remedies. See Muhammad v. Mayfield, 933 F.3d 993, 1001 (8th Cir. 2019) (emphasizing that a prisoner must properly exhaust his or her administrative remedies "in accord with a prison's 'critical procedural rules'" (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)). Because Rindahl did not exhaust his administrative remedies on any of the claims that survived this Court's § 1915A screening, the SDDOC Defendants are entitled to summary judgment on all such claims.

### 2. Qualified Immunity

The SDDOC Defendants also contend that they are entitled to summary judgment based on qualified immunity. The doctrine of qualified immunity shields government officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Sanders v. City of Minneapolis, 474 F.3d 523, 526 (8th Cir. 2007) (cleaned up and citation omitted). Courts use a two-step inquiry to determine whether qualified immunity applies: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Partlow v. Stadler, 774 F.3d 497, 501 (8th Cir. 2014). Plaintiffs must meet both steps to defeat qualified immunity, and courts can begin (and perhaps end) with either step. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Here, Rindahl has failed to establish that the SDDOC Defendants violated any of his constitutional or statutory rights. First, Rindahl alleges that the SDDOC Defendants have violated his First Amendment rights because they monitor his emails and impose character limitations on the emails sent and received. "A prison inmate retains those First Amendment rights that are not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Yang v. Mo. Dep't of Corrs, 833 F.3d 890, 894 (8th Cir. 2016) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). Such rights include the right to communicate with those on the outside subject to certain restrictions. Thongvanh v. Thalacker, 17 F.3d 256, 258 (8th Cir. 1994).

10

Restrictions on a prisoner's ability to communicate with others are valid only if they are "reasonably related to legitimate penological objectives." Yang, 833 F.3d at 894 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In making this determination, courts must examine four factors:

> (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the inmate has an alternative means of exercising the constitutional right; (3) the impact accommodating the inmate's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist.

Id. (citing Turner 482 U.S. at 89–91). Courts should give "substantial deference" to the professional judgment of prison officials in enacting and enforcing such regulations. Beard v. Banks, 548 U.S. 521, 528 (2006) (citation omitted). The prisoner complaining of the regulation bears the burden of proving that such regulation is unreasonable. Yang, 833 F.3d at 894.

Rindahl has failed to carry that burden. First of all, while Rindahl may have a constitutional right to communicate with others, he does not have a constitutional right to a particular form of communication such as email. Chatman v. Clarke, NO. 7:16CV00509, 2016 WL 7480426, at *2 (W.D. Va. Dec. 29, 2016) (citations omitted). Indeed, several district courts have held prisoners do not have a constitutional right to email correspondence. See Emery v. Kelley, NO. 1:18-CV-55-DPM-BD, 2018 WL 5779593, at *1 (E.D. Ark. Oct. 3, 2018) (collecting cases). Even if Rindahl did have a constitutional right to email correspondence, prison officials still have a legitimate interest in monitoring email for security reasons. See Ortiz v. Fort Dodge Corr. Facility, 368 F.3d 1024, 1026 (8th Cir. 2004) (emphasizing that prison officials may monitor paper mail for security purposes). Rindahl also has alternative means of communicating with others. For example, he can communicate with others by phone or through letters. See Id. at 1027 (finding in-person visits and telephone calls to be sufficient alternatives to letter writing). The only alternative to the status quo that Rindahl has proposed seems to be not monitoring his email

11

whatsoever which could pose security risks to both prison staff and prisoners alike. In sum, the prison's email policy appears to be reasonably related to legitimate penological objectives. Because Rindahl has not made out a violation of constitutional or statutory law, the SDDOC Defendants have qualified immunity on Rindahl's First Amendment claim.

Rindahl also asserts that the SDDOC Defendants violated the Fourteenth Amendment and the Federal Communications Act because, according to Rindahl, they overcharged him for his phone services and withheld his billing statements. This Court has previously analyzed these claims as against the GTL Defendants and dismissed them because Rindahl failed to state a claim. See Doc. 56. Because the Court has already discussed these claims at length in its previous opinion and order, it will discuss such claims only briefly here. First, Rindahl has failed to establish that he was overcharged on his phone bill. He claims there was a discrepancy between the rates in the contract and the actual amount that he paid. Doc. 1 at ¶¶ 6–8. However, in his complaint, Rindahl attributes the discrepancy to the FUSF fee. Doc. 1 at ¶¶ 6–8, 11, 90–92. The FUSF fee is a fee authorized by the Federal Communications Commission and is not an unjust, unreasonable, or unlawful charge. Rindahl v. Noem, 4:20-CV-04044-RAL, 2020 WL 6728840, at *7 (D.S.D. Nov. 16, 2020) (citing Rindahl v. Oliver, 1:19cv206 (TSE/MSN), 2020 WL 5901693 (E.D. Va. Mar. 20, 2020)). See also Holloway v. Magness, 666 F.3d 1076, 1079–1080 (8th Cir. 2012) (finding that correctional facility has no First Amendment obligation to provide inmates any telephone service nor any obligation to provide that service at a particular cost). Second, Rindahl has failed to establish the SDDOC Defendants withheld his billing statements or otherwise violated the Federal Communications Act. See Doc. 56 at 8–15.

Furthermore, Rindahl does not even attempt to explain how such acts would violate his Fourteenth Amendment rights other than claiming that the SDDOC Defendants failed to follow

the grievance procedure set out by prison policy or state law. Doc. 1 at ¶¶ 15, 19, 28, 59, 60; see also Doc. 1 at 35–36. Specifically, he asserts that GTL, in conjunction with the SDDOC, violated SDCL § 1-15-1.8. Doc. 1 at ¶¶ 15, 19, 28. However, SDCL § 1-15-1.8 merely gives all rules and regulations adopted by the SDDOC legal effect, and Rindahl does not point to any state rule or regulation that he claims any of the defendants have violated. In any event, a violation of state rules and regulations does not automatically give rise to a due process violation under the Fourteenth Amendment. Marler v. Mo. State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996) ("[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." (citation omitted)). In short, Rindahl has failed to establish that the SDDOC Defendants violated his constitutional or statutory rights, much less rights that were clearly established. Therefore, even if Rindahl had exhausted his administrative remedies, the SDDOC Defendants would still be entitled to summary judgment based on qualified immunity.

### IV.     Motion to Quash Subpoena

In a previous opinion and order, this Court granted the SDDOC Defendants' motions for protective orders and stayed discovery until this Court could determine whether the SDDOC Defendants were entitled to summary judgment under the doctrine of qualified immunity. Doc. 56. In spite of that opinion and order, Rindahl issued a subpoena to the SDDOC Defendants under Federal Rule of Civil Procedure 45, seeking all "Question and Answer Forms" relevant to their answer to his complaint. Doc. 63. The SDDOC Defendants objected to the subpoena, Doc. 75, and shortly thereafter moved to quash the subpoena under Federal Rules of Civil Procedure 26 and 45(d), Doc. 77. Under Rule 45(d)(3)(A)(iii), the court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.

R. Civ. P. 45(d)(3)(A)(iii). Therefore, SDDOC Defendants' motion is granted and Rindahl's subpoena is hereby quashed.

## V. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Rindahl's Motion for Rule 11 Sanctions, Doc. 57, is denied. It is further

ORDERED that Rindahl's Motion for Relief from Prior Judgment, Doc. 60, is denied. It is further

ORDERED that Rindahl's Motion for Rule 11 Sanctions, Doc. 61, is denied. It is further

ORDERED that the SDDOC Defendants' Motion for Summary Judgment, Doc. 69, is granted. It is further

ORDERED that Rindahl's Motion to Strike and Motion for Default, Doc. 76, is denied. It is finally

ORDERED that the SDDOC Defendants' Motion to Quash Subpoena, Doc. 77, is granted.

DATED this 25th day of February, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE